# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CHARLES MAYBERRY,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN CATES, *et al.*,<br><br>Defendants. | Case No.: 1:22-cv-1177-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 9)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Michael Charles Mayberry ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. The Court screened Plaintiff's complaint and granted leave to amend. Plaintiff's first amended complaint, filed on November 10, 2022, is currently before the Court for screening. (ECF No. 9.)

**I.     Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.,* 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at California Correctional Institution at Tehachapi, California where the events in the complaint are alleged to have occurred.  Plaintiff names the following defendants: (1) Brian Cates, Warden, (2) Jane Doe, correctional officer 2/W, and (3) John Doe #1, correctional officer 2/W, and (4) John Doe #2, correctional officer 3/W.

In claim 1, Plaintiff alleges as follows. In 1/23/22, Plaintiff was placed in Administrative Segregation ("Ad-Seg") due to testing positive with Covid 19.  Before leaving to Ad-Seg Facility A from Facility D, all of Plaintiff's property was inventoried and put in boxes, and placed in the transportation vehicle.  When Plaintiff arrived at Fac. A Ad-Seg, Plaintiff saw that the cell was filthy with trash littering the bunks and floor.  The toilet had urine stains on the rim and stains on the floor.  The cell had been occupied by prior Covid 19 positive inmates.  Plaintiff asked an unknown correctional officer, who did not have a name tag on so that that person could not be identified, for disinfecting cleaning products.  The correctional officer just closed the door and walked away. The next morning, Plaintiff asked Jane Doe and John Doe #1 for cleaning and disinfectant products.  Both just walked away and never brought any cleaning or disinfecting products so Plaintiff could clean the cell.  Plaintiff asked all the Jane Doe and John Does for the basic necessities of toothpaste, toothbrush, soap, shower shoes, razor, and cleaning products. The

officers would not give any of these necessities.  Plaintiff asked them for his property which contained these necessities, but each time Plaintiff requested the items, the correctional officers would walk away ignoring Plaintiff's requests.

On 1/23/22, Plaintiff asked for toilet paper but that request got ignored.  The inmate in the adjacent cell gave Plaintiff some toilet paper for a single use. When Plaintiff again asked for his property, which he would have items that are permissible and do not pose a safety issue, Jane Doe and John Doe #1 said that if Plaintiff kept bugging them for his property, they will make sure it gets lost.

When showers were offered, Plaintiff asked for his shower shoes to which John and Jane Does told Plaintiff that if he wants to shower, it will have to be with what Plaintiff has – no shower shoes.  It is mandatory to go to the shower, whether you want to shower or not and Plaintiff had to stand in the shower stall with no shower shoes for the duration of the shower time with no soap and no shoes which caused Plaintiff to contract athlete's foot.  "Never in the course of Plaintiff's stay in quarantin [sic] in Ad-Seg was plaintiff ever given any basic necessities." It is the responsibility of Brian Cates, as Warden, to ensure that all staff follow the letter of the law and all stated and federal policies and procedures. Instead, he swept the issue under the rug to protect his subordinates.  Witnesses were not interviewed under oath.

In claim 2, Plaintiff alleges as follows. While Plaintiff was housed in Ad-Seg Fac. A for testing positive for Covid, Plaintiff "continually asked Jane and John Does to let me speak to a Psychiatrist as I was previously under the care of CCCMS (Correctional Clinical Case Management System)."  Knowing his triggers, Plaintiff asked to speak to a Psychiatrist/Psychologist.  When the clinical nurse would come by, Plaintiff would ask to see a Psychiatrist/Psychologist, and she would just keep walking and taking temperatures.  The Jane Doe and John Doe #1 correctional officers would just laugh at Plaintiff's request.  Plaintiff was not given the opportunity to see, speak or counsel with a Psychiatrist/Psychologist during the time he was in Ad-Seg.  This denial triggered depression "in a low state," since he could not speak with family or have his property just because he had Covid.

Warden Brian Cates is responsible for the Mental Health of all inmates.  No log is kept of

3

an inmate's request to see mental health care. Witnesses were not interviewed under oath. Warden Cates hid his subordinates violations by claiming that they did not violate policies or procedures.

In claim 3, Plaintiff alleges as follows. While quarantined in Ad-Seg, Plaintiff continually asked Jane Doe and John Doe #1 for his religious property which was inventoried and boxed in Fac. D. The property Plaintiff was requesting was approved property and posed no threat to the safety and security of the institution or inmates. His religious property was denied to him. As a Muslim, Plaintiff is required to pray multiple times a day in clean environment, use Dhikr beads, use a prayer rug and to maintain his purity (from getting contaminated by any products on the floor). He is also supposed to read the Holy Qur'an and use oils after purification with the pleasing aroma before Allah. Plaintiff's request for his religious property went unanswered by Jane Doe and John Doe #1. They told Plaintiff that if he continues to bug them for his property, they will make sure his property gets lost. Throughout his housing in Ad-Seg, Plaintiff was not given his religious property or regular property. John Doe #2 told Plaintiff that it is not John Doe #2's job to pass out property.

Warden Brian Cates is responsible to ensure that religious freedoms are not violated. Witnesses were not interviewed under oath. Other religions had their bible, rosary beads and crosses. But as a Muslim, Plaintiff was not allowed his Dhikr beads or prayer rug.

Plaintiff seeks compensatory and punitive damages. Plaintiff also seeks a change in procedures during Covid such as change in quarantine procedures to allow inmates to converse with psychologist within 24 hours of arrival and provide inmates with approved property within 24 hours of arrival in quarantine.

### III. Discussion

#### A. Federal Rule of Civil Procedure 8

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must

set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

Here, Plaintiff's complaint is short, but it is not a plain statement of his claims showing that he is entitled to relief.  Plaintiff's allegations are conclusory and do not state what happened, when it happened, or which defendant was involved.   Despite being informed he must do so, Plaintiff has not stated the factual allegations regarding the duration of his confinement in Ad-Seg.

**B.   Supervisory Liability**

To the extent Plaintiff seeks to hold Warden Cates, or any defendant, liable based solely upon their supervisory role, he may not do so.  Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior.  *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); accord *Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc).  "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff does not allege that Warden Cates directly participated in any constitutional violation. Plaintiff seeks to impose liability based upon Warden Cates position as Warden and responsible for all actions at the institution.  However, there is no respondeat superior liability

under §1983. Plaintiff also does not allege that Warden Cates implemented a policy so deficient that it was a repudiation of his constitutional rights. At most, Plaintiff alleges that correctional officers ignored his requests but other inmates, such as those who had bibles and rosaries were permitted their property.

### C.     Eighth Amendment

#### 1. **Denial of Medical Care**

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096. In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Plaintiff fails to state a cognizable Eighth Amendment claim. Plaintiff fails to identify a serious medical need. Plaintiff states he was depressed on 1/23/22, but there are no facts as to the

duration of his confinement in Ad-seg and his symptoms such that the Court may determine if Plaintiff states a serious medical need. Further, Plaintiff fails to allege facts that each of the defendants knew of and disregarded an excessive risk to inmate health or safety. Plaintiff has been unable to cure this deficiency.

### 2. **Conditions of Confinement**

To state an Eighth Amendment claim, Plaintiff must satisfy both the objective and subjective components of a two-part test. *See Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991); *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). First, he must allege Defendants deprived him of the " 'minimal civilized measure of life's necessities.' " *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Wilson,* 501 U.S. at 304). When determining whether an alleged deprivation is objectively sufficiently serious to support an Eighth Amendment claim, the court must consider the circumstances, nature, and duration of the deprivation. *Johnson v. Lewis*, 217 F.3d 726, 731–32 (9th Cir. 2000). The "subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995).

Second, Plaintiff must allege facts sufficient to plausibly show each Defendant he seeks to hold liable had a "sufficiently culpable mind." *Wilson*, 501 U.S. at 297. "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). That is, that the official must "kn[ow] of and disregard[ ] an excessive risk to inmate health or safety[.]" Id. at 837.

Plaintiff's allegation that he was deprived of cleaning supplies and shower sandals does not rise to the level of a constitutional violation. Such temporarily unpleasant conditions of confinement do not rise to the level of constitutional violations. *See Anderson v. County of Kern*, 45 F.3d 1310 (9th Cir. 1995), citing *Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) (abrogated on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995)) (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered). To be cognizable, temporary conditions of confinement must be severe or prolonged. "[R]outine discomfort inherent in the prison setting" does not rise to the level of a

7

constitutional violation. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Indeed, despite being advised that Plaintiff must state the duration of any deprivation, Plaintiff fails to state how long he was deprived of shower sandals, cleaning supplies and other necessities.

In addition, to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient that each prison official knew of and disregarded a substantial risk of serious harm to the plaintiff.  Plaintiff has been unable to cure these deficiencies.

### D. First Amendment Right to Free Exercise of Religion

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, prohibits government from making a law prohibiting the free exercise [of religion]. The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (alteration in original) (citations and internal quotation marks omitted). "'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be 'judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'" J*ones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). "The challenged conduct 'is valid if it is reasonably related to legitimate penological interests.' " *Id*. (quoting *O'Lone*, 482 U.S. at 349).

"To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria. First, the claimant's proffered belief must be sincerely held; the First Amendment does not extend to so-called religions which ... are obviously shams and absurdities and whose members are patently devoid of religious sincerity. Second, the claim must be rooted in religious belief, not in purely secular philosophical concerns." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (alteration in original) (citations and internal quotation marks omitted), supplemented, 65 F.3d 148 (9th Cir. 1995); *see also Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (noting the Supreme Court's disapproval of the "centrality" test and

finding that the "sincerity" test in *Malik* determines whether the Free Exercise Clause applies).

Additionally, "[a] person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones*, 791 F.3d at 1031. "A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. at 1031-32 (alterations in original) (citation and internal quotation marks omitted).

Plaintiff fails to state a cognizable claim for denial of religious freedom. To the extent that Plaintiff asserts a First Amendment claim against any Defendant, such claim fails because Plaintiff does not allege any facts that these Defendants ever acted to deprive Plaintiff of his right to exercise his religious beliefs or placed a substantial burden on his religious exercise. Plaintiff does not allege that any Defendant otherwise had any authority to ensure Plaintiff's right to practice his religion or ability to retrieve Plaintiff's property. Moreover, Plaintiff does not allege that his religious beliefs are sincerely held, the duration of any deprivation, or that housing in Ad-Seg substantially burdened his religious exercise. Plaintiff has been unable to cure this deficiency.

### E. Failure to Investigate

To the extent Plaintiff alleges that Defendant Cates inadequately investigated Plaintiff's claims by failing to obtain witness sworn testimony, that is not a basis for a plausible § 1983 claim. *Baker v. Beam*, 2019 WL 1455321, at *6 (E.D. Cal. 2019). To the degree Plaintiff is trying to hold the individuals or others liable for an independent, unspecified constitutional violation based upon an allegedly inadequate investigation, there is no such claim. *See Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); *Page v. Stanley*, 2013 WL 2456798, at *8–9 (C.D. Cal. June 5, 2013) (dismissing Section 1983 claim alleging that officers failed to conduct thorough investigation of plaintiff's complaints because plaintiff "had no constitutional right to any investigation of his citizen's complaint, much less a 'thorough' investigation or a particular outcome"); *Tirado v. Santiago*, No. 1:22-CV-00724 BAM PC, 2022 WL 4586294, at *5 (E.D.

Cal. Sept. 29, 2022), report and recommendation adopted, No. 1:22-CV-00724 JLT BAM PC, 2022 WL 16748838 (E.D. Cal. Nov. 7, 2022) (no constitutional claim for failing to investigate an appeal).

### F. Title 15 and Policy Violation

To the extent that any Defendant has not complied with applicable state statutes or prison regulations for disclosure of information, these deprivations do not support a claim under § 1983. Section 1983 only provides a cause of action for the deprivation of federally protected rights. See e.g., *Nible v. Fink*, 828 Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11–12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations); *Tirado v. Santiago*, No. 1:22-CV-00724 BAM PC, 2022 WL 4586294, at *5 (E.D. Cal. Sept. 29, 2022), report and recommendation adopted, No. 1:22-CV-00724 JLT BAM PC, 2022 WL 16748838 (E.D. Cal. Nov. 7, 2022).

### G. Injunctive Relief

Plaintiff appears to seek injunctive relief in that he requests changes to policies and procedures. Requests for prospective relief are limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary

relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Committee of Central American Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).

The injunctive relief sought in this action is not narrowly drawn, and appears to extend much further than necessary to correct the harm identified, particularly as it applies to institutions where Plaintiff is not housed and to inmates who are not parties to this action.

### IV.     Conclusion and Conclusion and Recommendation

For the reasons discussed, the Court finds that Plaintiff has failed to state a cognizable claim for relief.  Despite being provided with the relevant legal standards, Plaintiff has been unable to cure the deficiencies in his complaint.  Further leave to amend is not warranted.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Court HEREBY DIRECTS the Clerk of the Court to randomly assign a district judge to this action.

Further, for the reasons stated above, IT IS HEREBY RECOMMENDED that this action be dismissed for failure to state a cognizable claim upon which relief may be granted.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the

///
///
///
///
///

specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

| | |
|---|---|
| Dated:   **December 21, 2022** | /s/ *Barbara A. McAuliffe* |
| | UNITED STATES MAGISTRATE JUDGE |